[Civ. No. 24270. Second Dist., Div. Two. July 7, 1960.]

ORVAL W. NELSON, Appellant, v. DARREL SPENCE et al., Respondents.

494

John L. Mace for Appellant.

Barker & Miller and G. Scott Miller for Respondents.

KINCAID, J. pro tem.*—The plaintiff brought this action to recover damages for alleged breaches of warranty on a contract between plaintiff as buyer and defendants as sellers, dated August 24, 1956, the pertinent portions of which are set forth in the footnote.[1] The defendants counterclaimed for

*Assigned by Chairman of Judicial Council.

[1] "Now THEREFORE, the parties do mutually agree as follows:

"1. That Seller shall sell and Buyer shall buy the assets of said business, including one 2 ton truck, all bags, supplies and stock on hand at this date and the exclusive use of the name 'Black Orgo Peat,' for a price of $4600.00, payable in installments of $150.00 on Monday of each

the purchase price on the contract. The court awarded the plaintiff damages of $3,053.37 for breach of warranty of covenant not to compete and awarded the defendants judgment on their counterclaim in the amount of $3,117.44, together with interest and costs. The parties have not challenged either of these amounts excepting the interest and costs allowed defendants.

The plaintiff directs his primary attack against the court's conclusion that he waived his right to sue for damages for breach of the defendants' warranty regarding the exclusive nature of the defendants' right to a certain unique type of peat moss. Plaintiff secondarily challenges the trial court's award of interest on the counterclaim and costs to the defendants.

The evidence, viewed in the light most favorable to the defendants, can be briefly summarized as follows: In the early summer of 1956 the plaintiff, who was engaged in the business of packaging and selling fertilizer, had several meetings with the defendants concerning the sale of their peat moss business to him. These meetings culminated in the contract of August 24, 1956.

The court found that the defendants represented to the plaintiff that they had the exclusive right to sell the peat produced by one Peter Gambetta. The contract contained a warranty to this effect and gave the plaintiff the right to rescind the contract within one year and recover his purchase price if the facts were not as warranted. The court further found that the plaintiff relied upon the defendants' representations and the rescission clause when he executed the agreement. Plaintiff commenced ordering peat through the defendants at the contract price. At a time thereafter plain-

week, commencing September 10, 1956, and continuing until said amount is paid in full, including interest at 6% per annum, on the unpaid balance. . . .

''5. Sellers agree that they will not engage in the business of selling peat, nor sell to any other person or enterprise any peat, during the term of this agreement, and it is agreed that Buyer shall have the right to sell said peat exclusively in any area of the United States. 6. Sellers hereby expressly warrant to Buyer that they have the contractual right to all of the peat produced by said Peter Gambretta [*sic* Gambetta], subject to one minor exception, that they can deliver said peat to Buyer as specified herein, that no other person has any right to sell said peat, and that all of the facts herein stated are true. Should any of the warranties herein expressed be not as warranted, then Buyer at his option may rescind this agreement and recover the purchase price paid to Sellers; said option to cancel, however, shall expire within one year of the date of this agreement. . . .''

tiff discovered that defendants did not have the exclusive right to Gambetta's peat. Relying on this breach of warranty, plaintiff did not make any of the weekly payments called for by the contract, excepting that in January 1957, he made a payment of $175. The exclusive right to sell Gambetta's peat was never obtained by defendants.

In February 1957, plaintiff commenced selling peat in large quantities to Coast Fertilizer Company. On April 19, 1957, defendants, in violation of their covenant not to compete, commenced selling peat directly to Coast and sent the plaintiff a letter telling him of their action. The defendants continued selling the peat directly to Coast until May 5, 1957, when Coast began buying the product directly from Gambetta. The plaintiff replied to the April 19th letter on April 30th, stating that he was holding defendants liable for damages for breach of warranty in that they had no exclusive contractual right with Gambetta. Thereafter, on May 13, 1957, defendants notified plaintiff that they considered him in default on the contract by virtue of his failure to pay the purchase price. Defendants did not tender to plaintiff the $175 which he had paid them.

■ Plaintiff's primary contention is that the court below erred in concluding that he had limited his rights to those of rescission by virtue of that portion of the contract which states: "Should any of the warranties herein expressed be not as warranted, then *Buyer at his option may rescind* this agreement and recover the purchase price paid to Sellers; said option to cancel, however, shall expire within one year of the date of this agreement." (Emphasis added.)

■ Where a contract expressly provides a remedy for a breach thereof, the language used in the contract must clearly indicate an intent to make the remedy exclusive. (*Inner Shoe Tire Co.* v. *Tondro,* 83 Cal.App. 689, 695 [257 P. 211] ; *Pratt-Low Preserving Co.* v. *Evans,* 55 Cal.App. 724, 731 [204 P. 241].) In *Pratt-Low, supra,* the court said: "It is significant, however, that the parties have used the term *may,* instead of *shall* or *must,* and ordinarily this word implies *permission,* and not a *mandate.* If the parties had intended to make it exclusive, it would have been a simple task to so provide." In contracts which have been held to contain exclusive remedies, the language used by the parties indicated, expressly, an intent to make the remedy exclusive. (*Wheeler* v. *Oppenheimer,* 140 Cal.App.2d 497, 499 [295 P.2d 128],

"Seller *only to be liable* for such costs and expenses" [emphasis supplied]); *Artukovich* v. *Pacific States etc. Co.,* 78 Cal.App.2d 1, 4 [176 P.2d 962]; "The measure of damage is the price of defective material *only*" (emphasis supplied); *United Iron Wks.* v. *Standard B. C. Co.,* 98 Cal.App. 517, 519 [277 P. 183]; "All defective castings will be replaced and foundry *shall not be responsible for any . . . contingent damages* caused by reason of defective castings" (emphasis supplied.)

In the instant case the words used are not in the imperative, but are "option" and "may" and thereby clearly indicate that the plaintiff's remedy was not exclusive.

Since the defendants have breached this warranty, plaintiff has the right to elect to pursue any of three remedies. He may treat the contract as rescinded and may recover upon a quantum meruit so far as he has performed; or he may keep the contract alive, for the benefit of both parties, being at all times ready and able to perform; or, third, he may treat the repudiation as putting an end to the contract for all purposes of performance and sue for the profits he would have realized if he had not been prevented from performing. (*Alder* v. *Drudis,* 30 Cal.2d 372, 381-382 [182 P.2d 195]; 12 Cal.Jur.2d (Contracts), § 253, p. 481; Witkin, Summary of California Law (Contracts), § 4, p. 296.)

Having elected to treat the breach of warranty as putting an end to the contract so far as any future performance thereof was concerned, plaintiff was under no further obligation to make the specified weekly payments to defendants. The trial court, having found that the defendants did breach their express warranty of possessing the exclusive right to sell the Gambetta produced peat, erred in concluding that plaintiff waived his right to recover damages for breach thereof because of his election not to rescind. The finding that the plaintiff's failure to pay the purchase price was without cause was therefore likewise incorrect.

The defendants contend that plaintiff is barred from recovery by section 1769 of the Civil Code, which states, *inter alia,* that ". . . if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of . . . warranty within a reasonable time after buyer knows . . . of such breach, the seller shall not be liable therefor." This statute relates to the sale of goods and has no application to the present situation which concerns the sale of a purported exclusive right.

The defendants, being in breach of warranty on two counts, had no right to rescind the contract. A party who has failed to perform a dependent covenant cannot rescind for the other party's breach or failure of consideration. (Witkin, Summary of California Law (Contracts), § 298, p. 327.) The right to rescind a contract rests only with the party who is without default. One party cannot violate the contract himself, and then seek a rescission on the ground that the other party has followed his example. (*Fairchild etc. Co.* v. *Southern etc. Co.*, 158 Cal. 264, 273 [110 P. 951]; *Joshua Tree T. Co.* v. *Joshua Tree L. Co.*, 100 Cal.App.2d 590, 596 [224 P.2d 85].) Defendants' letter of May 13, 1957, purporting to rescind was without legal effect and the court was in error in finding to the contrary. No finding having been made relative to whether plaintiff has suffered damages for breach of the warranty by defendants of their exclusive right to sell certain peat moss to plaintiff, the cause must be remanded for the taking of further evidence for the purpose of ascertaining such damages, if any.

Section 666 of the Code of Civil Procedure provides that where an established counterclaim exceeds plaintiff's demand, "judgment for the defendant must be given for the excess." The judgment herein fails to comply with this required procedure but instead awarded plaintiff $3,053.37 and defendants $3,117.44, plus interest of $495.66, a total of $3,613.10 and costs, instead of awarding $559.73 to defendants.

Costs cannot abide, as a matter of right, where the judgment in favor of the "prevailing party . . . could have been rendered in a court inferior in jurisdiction . . ." (Code Civ. Proc., § 1032, subd. (d).) Here the "judgment," under section 666, for the defendants, the "prevailing party," was an amount which could have been rendered in an inferior court. Costs cannot be awarded, therefore, unless the trial judge "in his discretion" allows such costs. (Code Civ. Proc., § 1032, subd. (d); *cf. Gerstein* v. *Smirl*, 70 Cal.App.2d 238, 240 [160 P.2d 585].)

The plaintiff's final contention is that it was improper to award interest on the defendants' counterclaim. This claim includes interest on contract payments which plaintiff was not required to make as well as for the reasonable value of the trade name and good will of the business and of the physical assets thereof. This was an unliquidated claim which required evaluation based upon conflicting evidence. Where, as here, damages are neither certain nor capable of being made

certain by calculation, interest is denied. (Civ. Code, § 3287.)
"The rule appears to be uniform, whether the case involved contract price or reasonable value, that interest is not allowable when damages cannot be computed except on conflicting evidence, . . . because of the absence of established or reasonably ascertainable market prices or values. In such cases, since the amount of the damages cannot be resolved except by accord, verdict or judgment, interest prior to judgment is not allowable." (*Lineman* v. *Schmid,* 32 Cal.2d 204, 212 [195 P.2d 408, 4 A.L.R.2d 1380] ; see also *Parker* v. *Maier Brewing Co.,* 180 Cal.App.2d 630, 634-636 [4 Cal.Rptr. 825].)

The judgment is reversed with directions to the trial court to receive evidence relating to the subject of damages, if any, suffered by plaintiff for breach by defendants of their warranty of their exclusive right to sell certain peat moss to plaintiff, and to make findings and enter judgment otherwise consistent with the conclusions herein expressed.

Fox, P. J., and Ashburn, J., concurred.