FILED
United States Court of Appeals
Tenth Circuit

April 18, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PATRICK VAN ZANEN; VICKI VAN
ZANEN,

        Plaintiffs - Appellants,

    v.

QWEST WIRELESS, L.L.C., a
Delaware corporation; QWEST
SERVICES CORPORATION, a
Colorado corporation; QWEST
COMMUNICATIONS
INTERNATIONAL, INC., a Delaware
corporation,

        Defendants - Appellees.

No. 07-1219

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 06-cv-2546-LTB)**

---

Jerry C. Bonnett (Francis J. Balint, Jr. and Kathryn A. Jann with him on the
briefs), of Bonnett, Fairbourn, Friedman & Balint, P.C., Phoenix, Arizona, for
Plaintiffs - Appellants.

Christopher J. Koenigs (Michael B. Carroll with him on the brief), of Sherman &
Howard, L.L.C., Denver, Colorado, for Defendants - Appellees.

---

Before **HARTZ**, **McKAY** and **KELLY**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

Plaintiffs Patrick and Vicki Van Zanen appeal the dismissal of their claim for unjust enrichment against Qwest Wireless, LLC; Qwest Services Corporation; and Qwest Communications International, Inc. (collectively, Qwest). The Van Zanens, who are Arizona residents, allege that Qwest has acted as an unlicensed seller of insurance in violation of the laws of Arizona and 13 other states where it markets and sells handset insurance to its wireless customers. They assert that Qwest has been unjustly enriched by its receipt of sales commissions in violation of the licensing statutes and seek to recover the portion of the handset-insurance premium that compensates Qwest for its sales efforts. The district court, after determining that the Arizona licensing statute provides no private right of action, ruled that the Van Zanens had not stated a claim for unjust enrichment on their own behalf. Because violation of a licensing statute, without more, is generally insufficient to support an unjust-enrichment claim against one who has performed as promised, we affirm the dismissal.

## I. BACKGROUND

On review of a dismissal for failure to state a claim, we accept the allegations of the complaint as true. *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). According to the complaint, the Van Zanens purchased handset insurance from Qwest in May 2005 and had continued to subscribe to it until the complaint was filed. Qwest, which is not licensed to

sell or solicit insurance in any of the 14 states in which it operates, markets and sells the handset insurance to its customers. The insurance policy itself is administered and underwritten by a third party, lock/line, LLC. Customers are billed for the insurance through Qwest, and Qwest retains a portion of the monthly payments as compensation for its sales efforts.

In December 2006 the Van Zanens filed suit in the United States District Court for the District of Colorado, alleging that Qwest's sales of the handset insurance violate the licensing laws of Arizona and 13 other states. They sought certification of the suit as a class action. Pleading implied statutory causes of action and common-law unjust enrichment, they prayed for an injunction against Qwest, a declaration that Qwest's conduct is unlawful, the imposition of a constructive trust on Qwest's share of the insurance payments, and disgorgement of that share.

The parties agreed that Arizona law governed the Van Zanens' statutory claim on their own behalf. Section 282 of the Arizona insurance code prohibits selling, soliciting, or negotiating insurance without a license. Ariz. Rev. Stat. Ann. § 20-282 (2001). Section 298 of that code prohibits receiving commissions without a license. *Id*. § 20-298(B). The only remedy explicitly provided by the statute is administrative recourse: if the director of insurance believes that a violation is occurring or is about to occur, the director may order the violator to cease and desist or may file a complaint to enjoin the violation. *See id*. § 20-292.

The district court first examined the Arizona licensing statute and decided that it implies no private right of action.  *Van Zanen v. Qwest Wireless, L.L.C.*, No. 06-cr-02546-LTB-PAC, 2007 WL 1160010, at *2–5 (D. Colo. April 19, 2007).  Turning to the unjust-enrichment claim, the court held that the Van Zanens had not stated a claim for unjust enrichment because they had suffered "no detriment, expense, or impoverishment." *Id.* at *6.  Rather, the court said, the Van Zanens "obtained a valuable product for which they bargained and which they intend to keep." *Id.*  Because the Van Zanens had failed to state any proper claims on their own behalf, the court dismissed the class-action claims as well. *Id.*  The Van Zanens appeal only the ruling on unjust enrichment.

## II.    DISCUSSION

We review de novo the dismissal of a complaint on a Rule 12(b)(6) motion for failure to state a claim.  *Sutton*, 173 F.3d at 1236.  We will affirm the dismissal only if the complaint "lacks 'enough facts to state a claim to relief that is plausible on its face.'" *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1236 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)).  The service contract between Qwest and its customers provides that Colorado law governs disputes, and the parties agree that we must apply Colorado law to the unjust-enrichment claim.

The sole question on appeal is whether the Van Zanens have stated a claim for unjust enrichment.  Under Colorado law, to establish a claim of unjust

enrichment a plaintiff must show that "(1) at plaintiff's expense (2) defendant received a benefit (3) under circumstances that would make it unjust for defendant to retain the benefit without paying." *DCB Constr. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 119–120 (Colo. 1998). As explained by the Colorado Supreme Court, unjust enrichment is "a judicially created remedy designed to avoid benefit to one to the unfair detriment of another." *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000). "The concept of unjust enrichment centers attention on the prevention of injustice." *Ninth Dist. Prod. Credit Ass'n v. Ed Duggan, Inc*., 821 P.2d 788, 795 (Colo. 1991) (en banc) (internal quotation marks omitted).

The Van Zanens assert that they have satisfied the elements of an unjust-enrichment claim because (1) they paid a sales commission to Qwest, (2) which Qwest has retained, (3) which is unjust because Qwest is prohibited by law from accepting a sales commission. The district court erred, they contend, in ruling that they have suffered no "detriment, expense, or impoverishment," *Van Zanen*, 2007 WL 1160010, at *6; they state that the payment for the sales commission was an expense. We agree that the Van Zanens incurred an expense, but we think that they have misconceived the district court's decision. The clear import of the decision is not that the Van Zanens failed to incur an expense; rather, it is that the Van Zanens received value for their money and that in the absence of any unfair

detriment, there is no injustice to prevent.  In other words, the third element of their claim—unjustness—is missing.[1]

We therefore turn to whether a violation of the Arizona insurance-licensing statute by itself is sufficient to establish that Qwest's retention of the sales commission is unjust.  The parties have not cited, nor have we found, any case in which the Colorado Supreme Court has addressed whether a licensing violation of this type may form the basis of an unjust-enrichment claim.  Thus, we must predict how that court would rule.  *See Rash v. J.V. Intermediate, Ltd.*, 498 F.3d 1201, 1206 (10th Cir. 2007) ("Where the state's highest court has not addressed the issue presented, the federal court must determine what decision the state court would make if faced with the same facts and issue." (internal quotation marks omitted)).  To assist us in making this prediction, we examine the views expressed by other courts and authoritative sources.

When an unlicensed person has been paid by the plaintiff but has not yet performed, the plaintiff can often recover the payment.  *See* 2 George E. Palmer,

_____

[1]We note one peculiarity of the Van Zanens' unjust-enrichment claim. They do not contend that the price of the headset insurance that they obtained from lock/line is above market price or even that it costs more than the value to them.  Indeed, if Qwest were licensed or if lock/line did not pay any commission to Qwest, they would be making no claim for a refund.  Their complaint is simply that part of what they pay for the insurance goes to Qwest as a commission.  We are unsure whether an unjust-enrichment claim against the seller of a product or service can be based on how the seller elects to use the sales proceeds (at least, absent an affirmative promise or representation about how it would use them).  But Qwest has not argued the point, so we need not resolve it.  We mention it only to clarify that we have not implicitly decided it in favor of the Van Zanens.

The Law of Restitution § 8.3(b), at 186 (1978).  But the general rule is to the contrary when the plaintiff has received the promised services.  "When services contracted for have been performed by an unlicensed person, courts nearly always have denied restitution of payments made for such services." *Id*. at 184.  *See generally* Maurice T. Brunner, Annotation, *Recovery Back of Money Paid to Unlicensed Persons Required by Law to Have Occupational or Business License or Permit to Make Contract*, 74 A.L.R. 3d 637, §3[a]-[b] (1976) (collecting cases).

Various rationales have been offered for this rule.  They include: (1) that recognizing a claim for unjust enrichment would provide a remedy not intended by the licensing statute, *see Comet Theatre Enters., Inc., v. Cartwright*, 195 F.2d 80, 81 (9th Cir. 1952); *Main v. Taggares*, 504 P.2d 309, 312–13 (Wash. Ct. App. 1972); (2) that restitution would itself be inequitable by affording a windfall to the plaintiff, *see Gallagher v. Leary*, 674 A.2d 787, 788 (Vt. 1996); (3) that a plaintiff has adequate remedies at law if performance by the unlicensed person is substandard, *see Bentivegna v. Powers Steel & Wire Prods., Inc*., 81 P.3d 1040, 1047 (Ariz. Ct. App. 2003); and (4) that a party who has rendered performance under a contract is not unjustly enriched because it has not retained a benefit without paying for it, *see Reg'l Props., Inc., v. Fin. & Real Estate Consulting Co.*, 678 F.2d 552, 564 (5th Cir. 1982); *Comet Theatre*, 195 F.2d at 83; *Citaramanis v.*

*Hallowell*, 613 A.2d 964, 972 (Md. 1992); *Bowlerama, Inc. v. Woodside Realty Co.*, 752 P.2d 1377, 1382, 1383–84 (Wyo. 1988).

The majority view is echoed in current scholarship that has been tentatively approved by the American Law Institute. Addressing agreements that are "illegal or otherwise unenforceable for reasons of public policy," the Tentative Draft of the Restatement (Third) of Restitution and Unjust Enrichment states: "There is no unjust enrichment if the claimant receives the counterperformance specified by the parties' unenforceable agreement." § 32(2) (Tentative Draft No. 3, 2004). Comment f to § 32 explains:

> So long as the defendant's obligation of performance remains executory, restitution is ordinarily available . . . . By contrast, where the defendant's obligation has already been performed, it is the allowance of the claim in restitution (rather than its refusal) that will result in forfeiture, penalizing the defendant rather than the claimant. In this setting, moreover, the claimant will rarely be able to demonstrate that the alternative to restitution is the unjust enrichment of the defendant.

Thus, even if we assume that contracts in violation of the insurance-licensing statute are unenforceable under Arizona law, the Van Zanens are not entitled to restitution because they have received counterperformance—namely, the receipt of the insurance. As comment f suggests, it is *granting* restitution to the Van Zanens that would effect an injustice. If the Van Zanens were allowed to recover the fees that they paid to Qwest, they would, as the district court noted, be allowed to retain a benefit without paying for it. Indeed, if the unlicensed party

-8-

has performed but has not been paid, that party may have a claim in restitution for the benefit conferred. *See id.*, § 32 cmt (e) ("[T]he fact of noncompliance [with a regulatory requirement]—with rare exceptions—will not be evidence of the moral turpitude or inequitable conduct that forecloses a claim in restitution" to an unlicensed party that has performed its part of the bargain). That the law will sometimes aid the unlicensed party to collect payment supports the conclusion that it will not step in to recover from that party compensation for performance already rendered.

The Van Zanens contend that a number of cases recognize unjust-enrichment claims against unlicensed persons who have performed as promised. But most of the cases cited by the Van Zanens are distinguishable from this case. In some, it appears that the courts were recognizing an implied cause of action in a statute, rather than recognizing an unjust-enrichment claim based on a violation of the statute. *See Ransburg v. Haase*, 586 N.E.2d 1295, 1300 (Ill. App. Ct. 1992) (the purpose of the act can be best effectuated by allowing recovery); *Mascarenas v. Jaramillo*, 806 P.2d 59, 62–63 (N.M. 1991) (searching for legislative intent and concluding that allowing recovery served the purposes of the statute); *Cooper v. Paris*, 413 So. 2d 772, 774 (Fla. Dist. Ct. App. 1982) (denying recovery would eviscerate the purpose of the statute). In none of these cases did the court use the term *unjust enrichment*. Other cases cited by the Van Zanens are distinguishable because the purchaser seeking restitution had not

received or retained any benefit from the service or product. *See Wineman v. Blueprint 100, Inc.*, 75 Misc.2d 665, 667 (N.Y. Civ. Ct. 1973); *Kansas City Comty. Ctr. v. Heritage Indus., Inc.*, 972 F.2d 185, 189–90 (8th Cir. 1992); *Lund v. Cooper*, 324 P.2d 62, 64–65 (Cal. Dist. Ct. App. 1958).

To be sure, a few cases, a small minority, adopt the Van Zanen's view. *See Kowalski v. Cedars of Portsmouth Condo. Ass'n*, 769 A.2d 344, 346–48 (N.H. 2001) (plaintiff can recover commissions paid to an unlicensed real-estate broker); *Vista Designs, Inc. v. Silverman*, 774 So. 2d 884, 886 (Fla. Dist. Ct. App. 2001) (attorney must disgorge legal fees paid to him because he was not authorized to practice law in that state). But we predict that Colorado would follow the majority view. First, that majority is a substantial one. Second, it is the view of the draft of the Restatement of Restitution and Unjust Enrichment, tentatively approved by the membership of the American Law Institute. We note that Colorado courts have repeatedly relied on the previous version of the Restatement of Restitution. *See, e.g.*, *DCB Constr. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 121–22 (Colo. 1998) (en banc); *In re Marriage of Allen*, 724 P.2d 651, 656–57, 658, 659–60 (Colo. 1986) (en banc); *Bankers Trust Co. v. Int'l Trust Co.*, 113 P.2d 656, 665 (Colo. 1941). We doubt that the Colorado Supreme Court would wish to swim against this tide.

The Van Zanens contend that even if we adopt what we take to be the majority rule, their claim is nevertheless cognizable under recognized exceptions

to that rule. First, they contest the district court's characterization of Qwest's sales efforts as a "valuable product" and suggest that they have alleged deficient performance by Qwest of the sales task. We do not so read their complaint. Moreover, in their response to Qwest's motion to dismiss, the Van Zanens did not argue that Qwest was unjustly enriched because its performance was flawed; the unjust enrichment claim was based solely on Qwest's being unlicensed. We therefore agree with the district court that the Van Zanens had not alleged "that Qwest performed its insurance sales efforts negligently or with any other level of malfeasance." *Van Zanen*, 2007 WL 1160010, at \*5. Because Qwest performed its sales function, restitution is improper.

Second, the Van Zanens contend that the rule we have adopted applies only when the parties are *in pari delicto*, or equally in the wrong, and that they are not *in pari delicto* with Qwest. They point to the general rule that when the parties to an illegal bargain are *in pari delicto*, a court will not "aid either to enforce, revoke, or rescind." *Potter v. Swinehart*, 184 P.2d 149, 151 (Colo. 1947). In other words, the court will leave equally culpable parties where they stand. But the rationale for not allowing recovery of money paid to an unlicensed defendant who has performed as promised is not that the plaintiff and the unlicensed defendant are *in pari delicto*. Rather, it is that the defendant has not been unjustly enriched. The only case cited by the Van Zanens that granted relief and could be read as suggesting that the sole reason for denying recovery would be

-11-

the *in pari delicto* doctrine is *Kowalski*, 769 A.2d at 348.  As previously observed, however, *Kowalski* represents the view of only a small minority of courts.[2]

## III.    CONCLUSION

We AFFIRM the judgment below.  Qwest's motion for attorney fees is DENIED.

---

[2]A century-old decision by a Colorado intermediate appellate court denied relief to a school district seeking repayment of salary paid to an unlicensed teacher who had performed her duties.  *See Sch. Dist. No. 46 v. Johnson*, 143 P. 264 (Colo. Ct. App. 1914).  The court stated that the school district was *in pari delicto* with the teacher because it was statutorily prohibited from employing the unlicensed teacher and therefore could not bring suit against her.  *See id*. at 266. But the court did not indicate that the district could have recovered if it had not been *in pari delicto*.  On the contrary, before mentioning the *in pari delicto* doctrine, the court said,

> The [teacher] having been qualified at the time the contract of employment was entered into, and the board having accepted her services without objection and paid for the same, there are few, if any, authorities, and *no good reasons, which would permit the district to recover for money already paid*, notwithstanding the terms of the statute, which provide that, if the term of school for which the teacher is employed extends more than one month after the expiration of such certificate, the teacher shall secure a new certificate, or a renewal of the one held, while it is in force.

*Id*. (emphasis added).  One could infer that even if the parties were not *in pari delicto*, the court would have ruled that the teacher had not been unjustly enriched by payment for services she had rendered.